**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2958-17T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

STEVEN L. WORSLEY,

     Defendant-Appellant.

_____

     Submitted March 12, 2020 –
     Decided September 1, 2020.

     Before Judges Suter and DeAlmeida.

     On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment Nos. 13-03-0508, 15-02-0352 and 16-01-0045 and Accusation No. 13-06-1033.

     Joseph E. Krakora, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

     Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Lisa Sarnoff Gochman, of counsel and on the brief).

Appellant filed a supplemental pro se brief.

PER CURIAM

Defendant Steven L. Worsley appeals from a January 5, 2018 judgment of conviction of second-degree eluding, N.J.S.A. 2C:29-2(b), as well as the sentence imposed for that conviction. We affirm.

I.

The following facts are derived from the record. In the early morning hours of December 10, 2014, defendant left a Long Branch bar and backed his vehicle into an unoccupied car, damaging its bumper. He drove away and pulled into a strip mall across the street from the bar. Larry Lundy, Jr., an off-duty police officer working as a bouncer, saw the accident and called 911. Defendant walked back to the bar and paced back and forth on the sidewalk, muttering to himself.

Officer Joseph Kennedy responded to the scene in a marked police vehicle. As the patrol car headed toward the bar, defendant got back into his car and exited the strip mall parking lot. He went the wrong way through a one-way entrance, nearly hitting another vehicle.

When Officer Kennedy was three to five car lengths behind defendant's vehicle, he activated his overhead and grille emergency lights and attempted a

traffic stop. The officer could see the emergency lights reflecting off the surrounding area and defendant's car.

Defendant did not stop. He instead sped up and nearly collided with another parked car. Defendant drove onto a curb then continued down a road that transitioned from commercial to residential. Traveling approximately forty miles per hour in a twenty-five-mile-per-hour zone, defendant's car drifted back and forth between the center line and the curb. Officer Marco Rodrigues joined the pursuit in a marked police vehicle.

At a bend in the road, defendant's car spun 360 degrees, crossed the double yellow line into opposing traffic, went onto a curb, and struck a utility pole. The car came to rest on the sidewalk facing perpendicular to the street. The emergency lights from both police vehicles were "bouncing off" defendant's car and illuminating the area.

Defendant sped away. Officer Kennedy activated his siren and followed defendant's car. Officer Rodrigues also activated his siren and continued the pursuit. Defendant did not pull over.

After running a red light and making a few turns, defendant stopped his car. The officers' emergency lights and sirens had been activated for sixty to ninety seconds and defendant traveled more than a mile before he stopped.

The officers arrested defendant and transported him to a police station. His blood alcohol content was determined to be 0.14 to 0.15, almost twice the legal limit to drive. A grand jury indicted defendant, charging him with second-degree eluding, N.J.S.A. 2C:29-2(b).

Prior to trial, the State moved to admit eight recordings of radio transmissions between Officer Kennedy and a police dispatcher. After an objection by defendant, the State agreed that two of the recordings contained inadmissible hearsay because the dispatcher repeated to the officer what Lundy had said on the 911 call. See State v. Bankston, 63 N.J. 263, 271 (1973). Defendant's counsel had no objection, however, to the admissibility of the remaining recordings.

At trial, the following audio recording was played for the jury:

> Headquarters, he's taking off here.
>
> 322.
>
> Headquarters he's just, uh, crashed on Brighton. He's running, headquarters. Victor, 2, 4, [E]cho, Nancy, Kilo.
>
> . . . .
>
> Going north on Westwood. North on Westwood.
>
> . . . .

Going north on Bath now.  Slowing down.

Speed check?  Speed?

All right.  We're uh – (inaudible).

324, speed?

     . . . .

Joe, where you at now?

We're in front of 317 Bath.

     . . . .

325, where you guys at?

     . . . .

Headquarters, we got him stopped. We got him in custody.  10-4.  One under 02:10:58.

"322" refers to Officer Rodrigues's badge number.  "Victor 2, 4, [E]cho, Nancy, Kilo" refers to defendant's license plate number.  "324" refers to Officer Kennedy's badge number.  "10-4" is code for "okay."  "One under 02:10:58" means one person was placed under arrest at 2:10:58 a.m.

Lundy testified that when defendant was pacing in front of the bar, he asked him, "you realize you hit a car, right?"  Defendant responded, "don't mess with me."  Defendant objected because Lundy's verbal exchange with defendant was not mentioned in the October 4, 2017 police report turned over by the State

5

as discovery. The trial court granted the motion and instructed the jury to disregard Lundy's testimony about his verbal exchange with defendant. The court repeated the instruction in its final instructions to the jury.

Shortly thereafter, defense counsel established through cross-examination of Lundy that he met with the assistant prosecutor and a detective approximately two weeks after October 4, 2017. During the second meeting, Lundy revealed his verbal exchange with defendant. The second meeting was summarized in an October 15, 2017 police report not produced in discovery.

Lundy also testified that he knew defendant's name because he had been placed on the bar's "banned list" for the events in question. The court sua sponte struck that testimony and instructed the jury to disregard any mention of "a so-called banned list."

The following day, defendant moved to strike all of Lundy's testimony because of the State's failure to produce the October 15, 2017 report. The trial court denied the motion. Noting that it had stricken Lundy's testimony with respect to his verbal exchange with defendant, the court held that the remainder of Lundy's testimony regarding him witnessing the accident and defendant's demeanor was admissible because defendant's counsel was aware of the encounter between Lundy and defendant outside the bar.

A-2958-17T2

After the jury delivered its verdict, defendant moved for a new trial based on the State's discovery violations. The trial court denied the motion on both procedural and substantive grounds. The court concluded the motion was procedurally barred because it was filed beyond the ten-day limit established in Rule 3:20-2. With respect to the substance of the motion, the court held that a new trial was not warranted because: (1) it struck the testimony relating to Lundy's verbal exchange with defendant and gave limiting instructions; and (2) the record contained overwhelming evidence of defendant's guilt apart from Lundy's stricken testimony.

At sentencing, the trial court granted the State's motion to sentence defendant to a discretionary extended term as a persistent offender, pursuant to N.J.S.A. 2C:44-3(a) and N.J.S.A. 2C:43-7(a). The court found aggravating factor three, N.J.S.A. 2C:44-1(a)(3), the risk of re-offense, aggravating factor six, N.J.S.A. 2C:44-1(a)(6), the extent of defendant's record, and aggravating factor nine, N.J.S.A. 2C:44-1(a)(9), the need to deter defendant and others from violating the law. The court found no mitigating factors. After weighing the

aggravating and non-existent mitigating factors, the court sentenced defendant

to an eight-year term of imprisonment with no period of parole ineligibility.[1]

This appeal followed.  Defendant raises the following arguments.

POINT I

DEFENDANT WAS DENIED THE RIGHT TO A FAIR TRIAL DUE TO THE JURY HEARING THE ACCUMULATION OF INADMISSIBLE EVIDENCE DESPITE THE COURT'S INSTRUCTIONS TO DISREGARD SUCH EVIDENCE.

A. DEFENDANT'S MOTION FOR [A] NEW TRIAL SHOULD HAVE BEEN GRANTED: THE FAILURE OF THE STATE TO DISCLOSE AN EYEWITNESS'[S] PRETRIAL STATEMENTS REGARDING STATEMENTS MADE TO HIM BY THE DEFENDANT AND HIS OBSERVATIONS OF DEFENDANT CONSTITUTED A VIOLATION OF THE DISCOVERY RULES AND THE WITNESS'[S] SUBSEQUENT TESTIMONY DEPRIVED DEFENDANT OF A FAIR TRIAL.

B. DEFENDANT WAS DENIED THE RIGHT TO A FAIR TRIAL DUE TO THE PLAYING OF INADMISSIBLE POLICE RADIO TRANSMISSIONS.

C. THE COURT COMMITTED REVERSIBLE ERROR WHEN, WHILE ATTEMPTING TO INSTRUCT THE JURY TO DISREGARD TESTIMONY THAT THE DEFENDANT WAS ON A

---

[1] The court also sentenced defendant to two concurrent custodial terms of five years following his guilty pleas to third-degree possession of a controlled dangerous substance and violation of probation under separate indictments.

BAR'S BANNED LIST, THE COURT REPEATED THAT DAMAGING PHRASE THREE TIMES.

POINT II

THE SENTENCE OF EIGHT YEARS [IN A] NEW JERSEY PRISON WAS EXCESSIVE.

A. THE DEFENDANT SHOULD NOT HAVE BEEN SENTENCED TO AN EXTENDED TERM SENTENCE BECAUSE THE COURT FAILED TO TAKE THE NECESSARY STEPS IN MAKING THAT DETERMINATION.

B. THE COURT ENGAGED IN DOUBLE-COUNTING OF DEFENDANT'S TWO PRIOR CONVICTIONS WHEN GRANTING THE STATE'S APPLICATION FOR AN EXTENDED TERM SENTENCE AND ALSO CONSIDERING THOSE SAME CONVICTIONS IN SUPPORT OF AGGRAVATING FACTOR NUMBER THREE [SIC]: THE EXTENT OF DEFENDANT'S PRIOR RECORD.

Defendant submitted a pro se brief raising additional arguments that Officer Rodrigues improperly refreshed his memory with Officer Kennedy's report, the indictment should have been dismissed pursuant to the Interstate Agreement on Detainers (IAD), N.J.S.A. 2A:159A-1 to -15, and that the court should have awarded jail credits for his pre-conviction detention in Florida.

II.

The trial court correctly determined defendant's motion for a new trial was time barred. Rule 3:20-2 establishes a ten-day deadline for filing a motion for

a new trial following the return of a guilty verdict. The rule provides in relevant part:

> A motion for a new trial based on the ground of newly-discovered evidence may be made at any time . . . . A motion for a new trial based on a claim that the defendant did not waive his or her appearance for trial shall be made prior to sentencing. A motion for a new trial based on any other ground shall be made within 10 days after the verdict or finding of guilty, or within such further time as the court fixes during the 10-day period.
>
> [R. 3:20-2.]

"That ten-day limit is one of the few time limit restrictions which may not be relaxed by the court even in the face of extenuating circumstances." Jonax v. Allstate Ins. Co., 244 N.J. Super. 487, 491 (Law Div. 1990) (citing Moich v. Passaic Terminal, 82 N.J. Super. 353 (App. Div. 1964)); accord State v. Wiggins, 291 N.J. Super. 441, 452 (App. Div. 1996); R. 1:3-4(c).

There is no doubt defendant's motion was untimely. The jury delivered its verdict on November 3, 2017. Defendant moved for a new trial eleven days later. Defendant did not ask for an extension of the ten-day period prior to its expiration.[2]

---

[2] Notably, defendant's brief does not address the untimeliness of his motion for a new trial. "[A]n issue not briefed is deemed waived." Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2020); Telebright Corp. v. Dir.,

We also agree with the trial court's conclusion defendant's motion was substantively meritless. Rule 3:20-1 provides in relevant part that "[t]he trial judge on defendant's motion may grant the defendant a new trial if required in the interest of justice." Defendant argues that he was entitled to a new trial because of the State's discovery violations.

Discovery in a criminal proceeding informs the defendant of "the extent of the State's case against him . . . ." State v. Kearny, 109 N.J. Super. 502, 506 (Law Div. 1970). This allows defense counsel to "intelligently advise as to the defense and properly prepare for trial." State v. Cook, 43 N.J. 560, 569 (1965). "A trial judge is not limited to dismissal as a remedy" for a discovery violation. State v. Clark, 347 N.J. Super. 497, 509 (App. Div. 2002). The court has broad discretion to determine the appropriate sanction for a discovery violation. State v. Marshall, 123 N.J. 1, 130 (1991).

The State concedes that it should have turned over the October 15, 2017 report detailing Lundy's verbal exchange with defendant. The trial court, however, cured the State's error by striking the part of Lundy's testimony not

N.J. Div. of Taxation, 424 N.J. Super. 384, 393 (App. Div. 2012) (deeming a contention waived when the party failed to include any arguments supporting the contention in its brief). We address the trial court's decision for the sake of completeness.

11

detailed in the earlier report and instructed the jury twice not to consider the stricken testimony. "The simple response to defendant's argument is that the judge sustained the objection, struck the testimony, and the jury presumably followed the instruction." State v. Castoran, 325 N.J. Super. 280, 287 (App. Div. 1999); accord State v. Winder, 200 N.J. 231, 256 (2009); State v. Manley, 54 N.J. 259, 271 (1969).

In addition, the jury was presented with overwhelming evidence of defendant's guilt through the testimony of the two officers, which established the elements of eluding: defendant's knowing failure to stop his vehicle when signaled to do so by law enforcement officers. See State v. Seymour, 289 N.J. Super. 80, 87 (App. Div. 1996). Lundy's stricken testimony was relevant only to the factual context in which the police were dispatched to the bar.

## III.

For the first time on appeal, defendant argues the trial court erred when it admitted the recording of Officer Kennedy's radio transmissions with the dispatcher on the night of the pursuit. Because defendant did not object to the admission of the recording, we review the record under the plain error standard for an error "clearly capable of producing an unjust result . . . ." State v. Whitaker, 200 N.J. 444, 465 (2009) (quoting R. 2:10-2). "Not any possibility of

an unjust result will suffice as plain error, only 'one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Coclough, 459 N.J. Super. 45, 51 (App. Div. 2019) (quoting State v. Macon, 57 N.J. 325, 336 (1971)). We see no such error here.

Defendant argues the recording was inadmissible hearsay under N.J.R.E. 801(c). However, the recording is evidence of Officer Kennedy's present sense impressions, an exception to the rule against hearsay. N.J.R.E. 803(c)(1); State ex rel. J.A., 385 N.J. Super. 544, 550 (App. Div. 2006), rev'd on other grounds, 195 N.J. 324 (2008).

A present sense impression is "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it and without opportunity to deliberate or fabricate." N.J.R.E. 803(c)(1).[3] The officer reported to the dispatcher what he was observing as the pursuit was unfolding. He had no opportunity to deliberate or fabricate his transmissions.

These circumstances, therefore, are unlike those in State v. Luna, 193 N.J. 202, 217 (2007), on which defendant relies. There, the Court held that a police

---

[3] We quote the version of the rule "effective July 1, 2020 as part of the 'restyling amendments' designed to make the rules of evidence simpler and easier to understand without effecting any substantive changes." Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. on N.J.R.E. 803(c)(1) (2020 Gann).

officer "cannot repeat specific details about a crime relayed to them by a radio transmission or another person without running afoul of the hearsay rule." Ibid. (citing Bankston, 63 N.J. at 268-69).

We reject defendant's argument that the recording was improperly used to bolster Officer Kennedy's testimony through introduction of prior consistent statements. The recording was admissible as an exception to the rule against hearsay under N.J.R.E. 803(c)(1). It was not, as defendant suggests, admitted pursuant to N.J.R.E. 803(a)(2), as an exception to the rule against hearsay as prior consistent statements of a witness expressly or impliedly alleged to have recently fabricated his testimony or to be under an improper influence of motive.

We have carefully considered defendant's remaining arguments regarding Lundy's testimony and conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

IV.

We review sentencing decisions for an abuse of discretion. State v. Blackmon, 202 N.J. 283, 297 (2010). We affirm a sentence, even if we would have imposed a different one, so long as the sentencing court "properly identifies and balances aggravating and mitigating factors that are supported by competent

credible evidence in the record."  State v. Natale, 184 N.J. 458, 489 (2005) (quoting State v. O'Donnell, 117 N.J. 210, 215 (1989)).

Our Code of Criminal Justice "provides for ordinary sentences, N.J.S.A. 2C:43-6[(a)], as well as extended-term sentences that carry greater punishment for the same crime."  State v. Pierce, 188 N.J. 155, 161 (2006).  Although some extended terms are mandatory, others are within the discretion of the trial court when statutory requirements are met.  Ibid.

Defendant concedes his criminal history at the time of the eluding qualified him as a persistent offender under N.J.S.A. 2C:44-3(a), giving the court the discretion, at the State's request, to sentence him to a broader sentencing range, with the maximum sentence being the top of the range for a crime one degree higher than the crime of which he was convicted.  See Pierce, 188 N.J. at 166-69.  He argues, however, that under State v. Dunbar, 108 N.J. 80 (1987), the trial court erred because it did not make a determination of the need to protect the public in finding him extended-term eligible.  Db19.

Defendant's argument is misplaced because in Pierce, the Court overruled Dunbar to the extent that its "reference to a finding of 'need to protect the public' is not a precondition to a defendant's eligibility for [extended-term] sentencing" and "is not a necessary condition . . . to the court's determination whether

defendant is subject to a sentence up to the top of the extended-term range." 188 N.J. at 170.

We have carefully reviewed the trial court's sentencing decision and find no abuse of the court's discretion. The ordinary term of imprisonment for a second-degree crime is between five and ten years. N.J.S.A. 2C:43-6(a)(2). The extended term for a second-degree crime is between ten and twenty years. N.J.S.A. 2C:43-7(a)(3). As a persistent offender convicted of a second-degree crime, defendant was subject to a range of five to twenty years imprisonment. See Pierce, 188 N.J. at 169.

After balancing the aggravating factors, which were well supported by the record, and the absence of mitigating factors, the court imposed a sentence above the mid-point for a second-degree offense, but well below the ten to twenty year range applicable to a first-degree offense for which defendant was eligible. The court found that a sentence in that range "would be wholly inappropriate and an excessive sentence here."

We have reviewed defendant's remaining arguments, including those raised in his pro se brief, and conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-2958-17T2